IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

STACEY UHLER, et al.          :

    v.                          :   Civil Action No. DKC 17-3462

OUTBACK STEAKHOUSE OF FLORIDA,
LLC t/a Outback Steakhouse    :

**MEMORANDUM OPINION**

Defendant Outback Steakhouse of Florida, LLC ("Defendant" or "Outback") filed a motion for summary judgment in this personal injury case on May 2, 2018. (ECF No. 18). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion for summary judgment will be denied.

I. Background[1]

On February 9, 2017, Plaintiff Stacey Uhler ("Plaintiff") and her friend, Virginia Wills ("Ms. Wills"), visited Defendant's restaurant in Prince Frederick, Maryland (the "restaurant"). (ECF No. 21-4, at 19-20). Plaintiff arrived at the restaurant sometime between 11:30 am and 11:40 am. (*Id*. at 33). Plaintiff and Ms. Wills were seated at booth 18 (ECF No. 21-6, at 7, p. 23), which

---

[1] Unless otherwise noted, the facts outlined here are undisputed and construed in the light most favorable to Plaintiff. Additional facts are discussed in the analysis section below.

was situated at floor level (ECF No. 21-4, at 34) and set with two sets of silverware rolled in separate cloth napkins (ECF Nos. 21-4, at 21-23; 21-6, at 7, p. 24). Ms. Shannon Mundo ("Ms. Mundo"), a server at Defendant's restaurant, served Plaintiff and Ms. Wills. (ECF Nos. 21-6, at 4, p. 13; 21-7, at 5, p. 14). Shortly after taking her seat, Plaintiff placed her napkin on her lap and arranged her silverware on the table.[2] (ECF No. 21-4, at 22). Outback staff brought no additional napkins to the table during the time that Plaintiff and Ms. Wills dined. (*Id.* at 23). After Plaintiff paid for lunch (ECF No. 21-5 ¶ 4), Ms. Mundo placed the receipt in a checkbook and delivered it to Plaintiff's table around 12:55 pm. (ECF No. 21-6, at 6, p. 21).

In an effort to use the restroom while Ms. Wills engaged in a phone call, Plaintiff stood up to exit the booth. (ECF No. 21-4, at 24-25). Immediately after standing up and taking a step toward the restroom, Plaintiff fell in front of booth 18, within Ms. Wills' line of vision. (ECF No. 21-4, at 34). Plaintiff states that she wore rubber-soled boots on the day of the accident (*id.* at 36), and previously encountered no trouble walking in the boots (*id.*). Plaintiff alleges that an Outback employee had dropped a cloth napkin next to Plaintiff's booth and "her foot

---

[2] Ms. Mundo described the napkins as "black" and "big, like a square mat." (ECF No. 18-3, at 7, pp. 24-25).

2

touched down on the napkin[,] causing her foot to go out from under her . . . resulting in her landing on the floor."³ (ECF No. 2 ¶ 5).

After the fall, an ambulance transported Plaintiff to Calvert Memorial Hospital, where Plaintiff learned that her ankle was fractured and dislocated. (ECF No. 21-4, at 39-46). Physicians at Calvert Memorial Hospital twice attempted to reset Plaintiff's ankle. (*Id*. at 38-40). Due to the severity of her injuries, Plaintiff was relocated to Washington Hospital Center, where physicians again attempted to reset her ankle. (*Id*. at 41). The next morning, upon release from Washington Hospital Center, physicians informed Plaintiff that her injuries required surgery. (*Id*. at 42). After waiting for the swelling in her ankle to subside, Plaintiff underwent initial surgery on February 15, 2017 and additional surgery on February 23, 2017. (*Id*. at 43-45). Beginning May 9, 2017, Plaintiff sought treatment through a course of physical therapy. (*Id*. at 53-54). Plaintiff testified that she continues to experience occasional pain and stiffness due to the permanent plates implanted in her ankle. (*Id.* at 55). Plaintiff also has ongoing pain in her knees, shoulder, and lower back. (*Id*. at 60).

---

³ Defendant disagrees, stating that "there is no evidence that there was a napkin on the floor at any time prior to Plaintiff's fall." (ECF No. 18 ¶ 13).

On August 23, 2017, Plaintiff and her husband Richard Uhler (collectively, "Plaintiffs") filed a complaint in the Circuit Court for Calvert County, Maryland, against Defendant as a result of injuries suffered by Plaintiff after she slipped and fell at Defendant's restaurant.[4] (ECF No. 2). Defendant removed the case to this court based on diversity jurisdiction on November 21, 2017. (ECF No. 1). Plaintiffs filed a response in opposition on May 21, 2018 (ECF No. 21), and Defendant replied on June 5, 2018 (ECF No. 22).

**II. Standard of Review**

A motion for summary judgment will be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). To prevail on a motion for summary judgment, the movant generally bears the burden of showing that there is no genuine dispute as to any material fact. *Liberty Lobby*, 477 U.S. at 248-50. A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 249. In

---

[4] Richard Uhler filed a claim for loss of consortium based on Stacey Uhler's injuries.

undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005), but a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F.Supp.2d 373, 375 (D.Md. 2001) (citation omitted). If a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case . . . which that party will bear the burden of proof at trial[,]" there can be no "genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 323.

### III. Analysis

#### A. Negligence

To establish a prima facie case for negligence under Maryland law, a plaintiff must prove: (1) the defendant owed a duty to protect the plaintiff from injury; (2) the defendant breached that duty; (3) the defendant's breach proximately caused plaintiff's

injury; and (4) the plaintiff suffered an injury. *See Rosenblatt v. Exxon Co., U.S.A.*, 335 Md. 58, 76 (1994).

Analysis of any negligence cause of action begins by determining whether a legally cognizable duty existed. The duty Defendant owed to Plaintiff depends on Plaintiff's status while present on Defendant's property. *Jackson v. A.M.F. Bowling Centers, Inc.*, 128 F.Supp.2d 307, 311 (D.Md. 2001) (citing *Rowley v. Mayor & City Council of Baltimore*, 305 Md. 456, 464–65 (1986)). "A business invitee is 'one invited or permitted to enter another's property for purposes related to the landowner's business.'" *Id.* (quoting *Tennant v. Shoppers Food Warehouse Md. Corp.,* 115 Md.App. 381, 388 (1997)). Plaintiff entered Defendant's establishment as a consumer and was thus a business invitee. Here, neither party disputes that Plaintiff was a business invitee on Defendant's property and that Defendant owed Plaintiff a duty of care in maintaining the restaurant. (ECF Nos. 18; 21-1, at 3, 15). Maryland applies the standard articulated in the RESTATEMENT (SECOND) OF TORTS § 343 (1965) when analyzing a private landowner's duty to an invitee:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an

> unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger.

*See Maans v. Giant Of Maryland, L.L.C.*, 161 Md.App. 620, 626 (2005). Although a business owes an invitee the highest duty of care, the proprietor of a restaurant "is not an insurer of his customers while they are on the premises, and no presumption of negligence on the part of the proprietor arises merely from a showing that an injury was sustained in his store." *Rawls v. Hochschild, Kohn & Co.*, 207 Md. 113, 118 (1955).

In a successful premises liability case, the plaintiff must first "prove the existence of an unsafe or dangerous condition on the premises." *Hodge v. Wal-Mart Stores, Inc.*, 360 F.3d 446, 451-52 (4th Cir. 2004) (citing *Kendrick v. Vaz. Inc.*, 244 Va. 380, 385 (1992)). Second, the plaintiff must also produce evidence to demonstrate that defendant: (1) created the dangerous condition; or (2) had actual or constructive knowledge of its existence. *Tennant,* 115 Md.App. at 389; *see also Rawls*, 207 Md. at 120 ("In an action by a customer to recover damages resulting from a fall in a store caused by a foreign substance on a floor or stairway, the burden is on the customer to produce evidence that the

storekeeper created the dangerous condition or had actual or constructive knowledge of its existence."); *Lexington Market Authority v. Zappala*, 233 Md. 444, 446 (1964) ("But the burden is upon the customer to show that the proprietor created the dangerous condition or had actual or constructive knowledge of its existence.").

The parties dispute whether a napkin, the purported dangerous condition, was on the floor when Plaintiff fell. Plaintiff admits that she did not see Ms. Mundo drop a napkin, but asserts that she was informed of a napkin's presence beside her foot after the fall. (ECF No. 21-4, at 29). Ms. Wills states in her affidavit that she saw a black Outback napkin next to Plaintiff's foot after Plaintiff fell. (ECF No. 21-5 ¶ 8) ("I immediately looked to my left while seated in the booth and saw a black Outback napkin, beside where I was seated and next to Ms. Uhler's foot."). In contrast, Defendant argues that Plaintiff's allegation is unsupported because Plaintiff's only evidence that a napkin caused her fall is a "gut feeling." (ECF No. 18-2, at 9, pp. 30-31). John Dixon ("Mr. Dixon"), the restaurant manager on duty at the time of Plaintiff's fall, testified that there was no napkin in Plaintiff's presence after the fall. (ECF No. 18-4, at 11, p. 38). However, Mr. Dixon did hear Plaintiff state that "she had fallen on her own napkin and . . . was very embarrassed that she had caused this

8

sort of scene." (*Id.*, at 11, p. 40). When viewed in the light most favorable to the Plaintiff, there is evidence that there was a napkin on the floor next to Plaintiff's booth.

The parties also dispute how the napkin reached its location on the floor. Plaintiff argues that Defendant created the dangerous condition, stating that Ms. Mundo dropped the napkin on the floor while clearing the table. (ECF No. 21-4, at 28).[5] Plaintiff asserts that, after she and Ms. Wills completed their meal, she paid the check and Ms. Mundo cleared the table of all items, including Plaintiff's napkin, except for two drink glasses and the checkbook. (ECF No. 21-4, at 25-26). However, when asked how she knew the "napkin . . . had fallen when the waitress had cleared the table," Plaintiff answered that she "was told that the napkin was by [her] foot after the fall." (*Id.*, at 29). Plaintiff also testified that she did not see Ms. Mundo drop the napkin, she did not see the napkin on the floor at any time prior to her fall, and Ms. Wills did not see Ms. Mundo drop the napkin. (*Id.*).

Ms. Mundo's testimony revealed a different version of events, stating that, in addition to the beverage glasses, both customers

---

[5] When asked if she believed Ms. Mundo dropped the napkin, Plaintiff testified, "Hmm! That would be my thought, yes." (ECF No. 21-4, at 28). Additionally, Plaintiff indicated in her interrogatory answers that, when she "[g]ot up from the table to go to the restroom . . . her foot touched on a napkin that had fallen when the waitress had cleared the table." (*Id.*).

9

also retained their napkins when she delivered the checkbook to Plaintiff's table. (ECF No. 18-3, at 16, p. 61). Ms. Mundo also testified that, although she has no "independent recollection of clearing their table," she maintained a practice of removing used napkins from the table after patrons vacated the table. (*Id.*, at 11, pp. 38-39; at 9, p. 33).

Plaintiff testified that she removed her napkin from her lap and placed it on the table *before* Ms. Mundo cleared the table and returned with the checkbook. (ECF No. 21-4, at 27). Therefore, again when viewed in the light most favorable to Plaintiff, she was not the party who dropped the napkin because she no longer possessed the napkin when she stood up to exit the booth.

Whether the Defendant or another restaurant patron was responsible for the napkin's rogue appearance on the floor requires a more intricate analysis. Although evidence supporting the conclusion that Defendant dropped the napkin is thin, the facts here diverge from similar cases finding an outright absence of evidence indicating that the proprietor created the dangerous condition. Albeit unpublished, *Myers v. TGI Friday's Inc.*, No. CIV. JFM 07-333, 2007 WL 4097498 (D.Md. Nov. 9, 2007), is a strikingly similar case wherein the trial judge parsed the degree of affirmative evidence a plaintiff must provide to show that a proprietor created a dangerous condition. There, the plaintiff

alleged that an unknown substance located on the restaurant floor caused her to slip and fall while en route to the bathroom, but asserted that she did not see any substance on the floor before or after she fell.[6]  *Id.* at *1.  However, the accident in *Myers* took place around 9:00 p.m., after the restaurant had been operational for many hours and filled with a high volume of patrons who trekked back-and-forth over the slip-and-fall location to access the restroom.  *Id.* at *7.  The court concluded that the plaintiff failed to provide evidence demonstrating that Friday's caused the dangerous condition "because it [was] equally likely that a customer caused Friday's floor to be slippery."  *Id.* at *8; see also Joye v. Great Atl. & Pac. Tea Co.*, 405 F.2d 464 (4th Cir. 1968) (finding that Defendant did not cause the dangerous condition, a banana on the floor, because numerous customers next to the display prior to the Plaintiff's slip-and-fall could have dropped the banana); *Ronk v. Corner Kick, Inc.*, 850 F.Supp. 369, 371 (D.Md. 1994) ("Where the presence of a foreign substance on the floor is explainable by causes beyond a proprietor's control as well as within it, it is impermissible for a trier of fact to conclude that the proprietor's cause was the cause-in-fact."); *Haj-Mabrouk v. Wal-Mart Stores E., L.P.*, 395 F.App'x 43 (4th Cir.

---

[6] Similarly, Ms. Mundo testified that the restaurant layout requires patrons to pass by Plaintiff's booth when accessing the bathrooms.  (ECF No. 21-6, at 10, p. 36).

2010) (affirming District Court decision finding that there was not enough evidence to demonstrate Wal-Mart created the puddle, located in a high-traffic area where many other patrons walked and pushed carts prior to the accident, that caused Plaintiff to fall).

The facts here are distinguishable. Plaintiff testified that the restaurant was "busy" on the day of her accident and gradually became busier as her lunch transpired. Plaintiff's testimony also states that a paramedic dined nearby, asserting that he was "right there" and appeared by her side immediately after she fell. (ECF No. 21-4, at 33). However, Ms. Mundo testified that the restaurant was "light" and there were few other patrons present during the time leading up to Plaintiff's fall. (ECF No. 21-6, at 10, p. 35). Mr. Dixon confirmed Ms. Mundo's recollection, indicating that only two other tables contained patrons at the same time as Plaintiff and Ms. Wills' visit. (ECF No. 21-7, at 5, p. 14). Viewing the evidence in the light most favorable to Plaintiff, Plaintiff dined at a time when few other patrons were present and the restaurant was open for only a short period prior to Plaintiff's slip-and-fall, making it implausible that another patron dropped the napkin beside Plaintiff's booth. Moreover, the brief time between the clearing of the table and Plaintiff's fall, approximately five minutes, did not present an opportunity for another patron to drop a napkin. The absence of an alternative

explanation for the napkin's location on the floor leads to the inference that Ms. Mundo negligently dropped the napkin next to Plaintiff's booth when clearing Plaintiff's table.[7]

Finally, Plaintiff sufficiently alleges damages based on the injuries that resulted from her slip-and-fall at Defendant's restaurant, satisfying the final requirement of her negligence claim.

### B. Contributory Negligence

Defendant also argues that it is not responsible for Plaintiff's accident due to Plaintiff's contributory negligence. Defendant specifically relies on Ms. Uhler's statement that she fell on her own napkin. (ECF No. 18, at 10). However, Plaintiff testified that she removed the napkin from her lap and placed it on the table several minutes before exiting the booth. Additionally, Plaintiff refrained from consuming alcohol and wore sturdy footwear at the time of the accident, making it even more unlikely that she personally contributed to the fall. *See Myers*, 2007 WL 4097498, at *6 (Because Plaintiff wore heeled shoes and consumed multiple alcoholic beverages immediately prior to her fall, the court noted an increased likelihood that she slipped-

---

[7] It is likely that Ms. Mundo did not realize she dropped the napkin if she did. Under Maryland law, when there is enough evidence to show that Defendant created the dangerous condition, knowledge does not appear to be required. *See, e.g., Rybas v. Riverview Hotel Corp.* 21 F.Supp.3d 548, 562-567 (D.Md. 2014).

and-fell of her own volition rather than falling prey to a slippery substance on the floor.). Viewed in the light most favorable to Plaintiff, the evidence demonstrates that Plaintiff would not have been contributorily negligent. Accordingly, Defendant is not entitled to summary judgment.

**IV. Conclusion**

For the foregoing reasons, Defendants' motion for summary judgment will be denied. A separate order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge